13 CV 6702

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

CONAIR CORPORATION,

             Plaintiff,

v.

JARDEN CORPORATION, and
JARDEN CONSUMER SOLUTIONS

             Defendants.

-------------------------------------------------------------------x

COMPLAINT AND
JURY DEMAND

RECEIVED
SEP 23 2013
U.S.D.C. S.D.N.Y.
CASHIERS

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Conair Corporation ("Conair") for its Complaint against Defendants Jarden Corporation and Jarden Consumer Solutions (collectively, "Jarden"), alleges as follows:

## THE PARTIES

1.      Conair is a Delaware corporation headquartered in East Windsor, New Jersey, with sales and marketing offices in Stamford, Connecticut. Conair is a developer, manufacturer and marketer of health and beauty products and kitchen and electronic appliances, including coffee makers. Divisions of Conair are among the most recognized and respected brands in small kitchen appliances and cookware, including Cuisinart®.

2.      On information and belief, Jarden Corporation is a Delaware corporation with its principal place of business at 555 Theodore Fremd Avenue, Suite B-302, Rye, New York, 10580. On information and belief, Jarden Corporation is in the business of manufacturing branded consumables and consumer products, including Mr. Coffee®, that it markets, distributes, and sells in the State of New York and throughout the United States, by and with Jarden Consumer Solutions.

3.     On information and belief, Jarden Consumer Solutions, formerly doing business as Sunbeam Products, Inc. ("Sunbeam"), is a wholly-owned subsidiary of Jarden Corporation and is headquartered at 2381 NW Executive Center Drive, Boca Raton, Florida 33431. On information and belief, Jarden Consumer Solutions is in the business of manufacturing branded consumables and consumer products, including Mr. Coffee®, that it markets, distributes, and sells in the State of New York and throughout the United States, by and with Jarden Corporation.

4.     On information and belief, Defendants collaborate to manufacture, import, market, distribute, and sell branded consumables and consumer products, including Mr. Coffee®, in the State of New York and throughout the United States.

## NATURE OF THE ACTION

5.     This is an action arising under the patent laws of the United States (Title 35, United States Code, § 100, *et seq.*) based upon Jarden's infringement of one or more claims of Conair's U.S. Patent No. 5,473,972 ("the '972 Patent ").

6.     On information and belief, Jarden manufactures, imports, uses, offers for sale and/or sells espresso, cappuccino and/or latte makers branded as Mr. Coffee® café barista ("Accused Products"), including at least the following model numbers: BVMC-ECNO1000, BVMC-ECNO1001C; BVMC-ECNO1001R; and BVMC-ECNO1001W. Upon information and belief, these Accused Products are manufactured, imported, marketed, and/or sold by Jarden in the State of New York and throughout the United States.

7.     Jarden has infringed one or more claims of the '972 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c), either directly or indirectly, literally or under the doctrine of equivalents, by making, importing, using, offering for sale, and/or selling in the United States, without authority, the Accused Products prior to the expiration of the '972 Patent.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Conair's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over each of the Defendants by virtue of the fact that, *inter alia*, each Defendant has conducted business in New York, has availed itself of the rights and benefits of New York law, and has engaged in substantial and continuous contacts with the State. Each of the Defendants derives substantial revenue from New York, and engages in other persistent courses of conduct in New York.

10.     On information and belief, each of the Defendants conducts substantial business in this judicial district, regularly solicits business from, does business with, and derives value from goods and services provided to customers in this judicial district, and has committed acts of infringement in this judicial district, including selling and offering to sell the accused products and/or services, and such acts are and will be continuing.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400(b) because, on information and belief, Jarden have committed and are continuing to commit acts of infringement in this judicial district, provide a substantial volume of goods and do a substantial amount of business within this judicial district, and thus purposefully avail themselves of the privilege of conducting activities within New York.

## THE PATENT-IN-SUIT
## (THE '972 PATENT)

12.     The allegations of ¶¶ 1-11 are incorporated herein by reference.

13.     Conair is the owner of all right, title and interest to and in the '972 Patent, entitled "MILK CONTAINER ATTACHMENT FOR CAPPUCINO MAKER," which was duly and legally issued by the United States Patent and Trademark Office on December 12, 1995, to

Leandro P. Rizzuto, Theodore B. Mullé, and Asik Braginsky, which was assigned to Conair. A true and correct copy of the '972 patent is attached to this Complaint as **Exhibit A**.

14.     Conair acquired Cuisinart in 1989. Cuisinart manufactures and sells espresso, cappuccino and/or latte makers and is a leader in kitchen appliances. The Cuisinart division of Conair sells some of the most recognized and respected brands in small kitchen appliances and cookware.

15.     On information and belief, in 2005, Jarden Corporation acquired Sunbeam, which makes, imports, offers to sell, and sells in the United States espresso, cappuccino and/or latte makers under the Mr. Coffee® brand. Jarden's acquisition of the Mr. Coffee® brand gives it a large presence in the espresso, cappuccino and/or latte machine market segments.

16.     On April 25, 2013, Conair wrote to Sunbeam, doing business as Jarden Consumer Solutions, to notify Jarden that certain of its espresso, cappuccino and/or latte makers under the Mr. Coffee® café barista brand name, including at least model numbers BVMC-ECNO1000, BVMC-ECNO1001C; BVMC-ECNO1001R; and BVMC-ECNO1001W, infringe the '972 patent. Jarden received the letter, but did not stop manufacturing, importing, offering to sell, selling any of the Accused Products; Jarden also did not recall any of the Accused Products.

17.     On information and belief, Jarden was aware of the existence of the '972 Patent prior to the filing of this complaint.

18.     Jarden does not have a license to practice the '972 Patent.

19.     The manufacture, importation, use, sale, and/or offer for sale of the Accused Products are covered by the '972 Patent, and Conair has the right to enforce the '972 Patent.

## FIRST COUNT FOR RELIEF
## (INFRINGEMENT OF THE '972 PATENT)

20.     The allegations of ¶¶ 1-19 are incorporated herein by reference.

21.    On information and belief, Jarden has infringed and continues to infringe, contributorily infringe and/or induce infringement of one or more claims of the '972 Patent, pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c), either directly or indirectly, literally or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States, without authority, the Accused Products that are covered by one or more claims of the '972 Patent.

22.    Jarden directly infringes and/or will infringe the '972 Patent by making, using, selling, offering for sale, and/or importing the Accused Products.

23.    Jarden was aware of the existence of the '972 Patent prior to the filing of this complaint.  Jarden continues to manufacture, sell, and/or offer to sell the Accused Products in willful, intentional, and deliberate infringement of one or more claims of the '972 Patent.

24.    On information and belief, Jarden indirectly infringes the '972 Patent by knowingly inducing the infringement of these patents by end users of its Accused Products.

25.    On information and belief, Jarden contributes to the infringement of the '972 Patent because Jarden knows that its Accused Products are made for use in infringement and are not suitable for substantial non-infringing use.

26.    Jarden's participation in, contribution to, aiding, abetting, and/or inducement of the use of Accused Products constitutes infringement of one or more claims of the '972 Patent under 35 U.S.C. § 271(a), (b) and (c).

27.    Conair will be irreparably harmed by Jarden if Jarden continues to infringe, actively induce infringement or contribute to the infringement of one or more claims of the '972 Patent.  Pursuant to 35 U.S.C. § 283, Conair is entitled to a permanent injunction against further infringement.  Conair does not have an adequate remedy at law.

28.     Conair has been and continues to be damaged by Jarden's infringement of the '972 Patent and is entitled to damages.

29.     On information and belief, Jarden's infringement of one or more claims of the '972 Patent is willful and deliberate, and justifies an increase in damages of up to three times in accordance with 35 U.S.C. § 284.

30.     On information and belief, Jarden's infringement of the '972 Patent is exceptional and entitles Conair to attorneys' fees and costs incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Conair respectfully requests that this Court enter judgment in its favor against Jarden and grant the following relief:

A.     an adjudication that Jarden has infringed one or more claims of the '972 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c), by the commercial manufacture, use, offer for sale, or sale in the United States, and/or importation or distribution into the United States, of the Accused Products before the expiration of the '972 patent;

B.     a permanent injunction enjoining Jarden, its officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and those persons in active concert or participation with any of them, from infringing the '972 Patent, and/or contributing to and/or inducing anyone to do the same, including the commercial manufacture, use, offer to sell, sale, importation or distribution of the Accused Products;

C.     an order enjoining Jarden, its officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and those persons in active concert or participation with any of them, from infringing the '972 Patent, and/or contributing to and/or inducing anyone

to do the same, including the commercial manufacture, use, offer to sell, sale, importation or distribution of the Accused Products while the litigation is pending;

        D.     a judgment declaring that the commercial manufacture, use, offer for sale, or sale in the United States, and/or importation or distribution into the United States, of the Accused Products, or inducing or contributing to such conduct, would constitute infringement of one or more claims of the '972 Patent by Jarden pursuant to 35 U.S.C. § 271 (a), (b) and/or (c);

        E.     a determination that Jarden's infringement is and has been willful, and that this is an exceptional case under 35 U.S.C. § 285;

        F.     an award of damages sustained as a result of Jarden's infringement, in an amount to be ascertained at trial, including (i) a reasonable royalty on sales of the Accused Products; and (ii) Conair's lost profits;

        G.     a trebling for any and all damages pursuant to 35 U.S.C. § 284;

        H.     an assessment of pre-judgment and post-judgment interest and costs against Jarden, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

        I.     an award of reasonable attorneys' fees, pursuant to 35 U.S.C. § 285; and

        J.     such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Conair hereby demands a trial by jury on all issues properly so triable.

Dated: September 23, 2013
      New York, New York

**PAUL, WEISS, RIFKIND, WHARTON, & GARRISON LLP**

By: _____
    Catherine Nyarady
    cnyarady@paulweiss.com
    Josephine Young
    jyoung@paulweiss.com
    1285 Avenue of the Americas
    New York, New York 10019-6064
    Phone:   (212) 373-3716
    Facsimile:     (212) 492-0716

*Attorneys for Plaintiff Conair Corporation*

# Exhibit A

US005473972A

# United States Patent [19]

## Rizzuto et al.

[11] **Patent Number:** 5,473,972

[45] **Date of Patent:** Dec. 12, 1995

[54] **MILK CONTAINER ATTACHMENT FOR CAPPUCINO MAKER**

[75] Inventors: **Leandro P. Rizzuto**, Greenwich; **Theodore B. Mullé**, Ridgefield, both of Conn.; **Asik Braginsky**, Forest Hills, N.Y.

[73] Assignee: **Conair Corporation**, Stamford, Conn.

[21] Appl. No.: **327,609**

[22] Filed: **Oct. 24, 1994**

[51] Int. Cl.⁶ ..................................................... A47J 31/40
[52] U.S. Cl. ............................. **99/290**; 99/293; 99/300
[58] Field of Search ..................... 99/295, 290, 293, 99/294, 299, 300, 302 R, 316; 261/DIG. 16, DIG. 76

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,800,805 | 1/1989 | Mahlich et al. | 99/293 |
| 4,921,640 | 5/1990 | Wu | 99/293 |
| 4,922,810 | 5/1990 | Siccardi | 99/293 |
| 5,265,520 | 11/1993 | Giuliano | 99/293 |
| 5,330,266 | 7/1994 | Stubas | 99/293 |
| 5,335,588 | 8/1994 | Mahlich | 99/293 |
| 5,339,725 | 8/1994 | De'Longhi | 99/293 |

*Primary Examiner*—David Scherbel
*Assistant Examiner*—Tony G. Soohoo
*Attorney, Agent, or Firm*—Haynes N. Johnson

[57] **ABSTRACT**

A separate, removable milk container is provided which can be attached to and detached from a cappucino coffee maker. Alternatively, it can be attached to a modified espresso maker, converting it to making cappucino. The container has make and break connections for a milk delivery tube, so that, when the unit is not in use, the milk container can be removed from the unit and stored in a refrigerator to prevent spoiling of the milk. The cappucino maker includes a steam line to heat the coffee and milk. This line runs through a venturi, drawing milk into it, and then forces the steamed and frothed milk to a steamed milk outlet proximate to the coffee dispensing spout. The separate milk container includes means for attaching it to the unit and a milk tube which runs to the venturi. Thus, in use, the venturi draws milk from the container into the steam line and to the frothed milk outlet.

**5 Claims, 3 Drawing Sheets**



**U.S. Patent**          Dec. 12, 1995          Sheet 1 of 3          5,473,972



FIG. 1

FIG. 2

FIG. 3



FIG. 4



FIG. 5

FIG. 6



FIG. 7

5,473,972

**1**

## MILK CONTAINER ATTACHMENT FOR CAPPUCINO MAKER

### FIELD OF THE INVENTION

This invention relates to the field of cappucino coffee makers, and, in particular, to ones having a milk container which is removable for storage and to ones having a milk spout proximate to the coffee spout. The invention can also be used to modify existing espresso makers so that they can make cappucino coffee.

### BACKGROUND OF THE INVENTION

Cappucino makers have, in the past, had problems in their use: the milk container has been a part of the maker itself, meaning that, when the unit is not to be used for a period, the milk must be removed and the unit cleaned; and, also, the spout for dispensing hot, frothy milk has been at a different location from the spout for dispensing coffee, requiring that the cup be repositioned. The present invention solves these problems.

### BRIEF SUMMARY OF THE INVENTION

Our invention utilizes a separate, removable milk container which can be attached and detached from a cappucino coffee maker. Alternatively, it can be attached to a modified espresso maker, converting it to making cappucino. The container has make and break connections for a milk delivery tube, so that, when the unit is not in use, the milk container can be removed from the unit and stored in a refrigerator to prevent spoiling of the milk.

The cappucino maker includes a steam line to heat the coffee and milk. This line runs through a venturi, drawing milk into it, and then forces the steamed and frothed milk to a steamed milk outlet proximate to the coffee dispensing spout. The separate milk container includes means for attaching it to the unit and a milk tube which runs to the venturi. Thus, in use, the venturi draws milk from the container into the steam line and to the frothed milk outlet.

### DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the cappucino maker, and shows the removable container both in its installed position and removed from the unit.

FIG. 2 is a perspective view of the milk container, with the top partially removed.

FIG. 3 is a front elevation of our cappucino maker, partly broken away.

FIG. 4 is a side elevation, partially broken away, taken on line 4—4 of FIG. 3.

FIG. 5 is a top plan view, partially broken away, taken on line 4—4 of FIG. 3.

FIG. 6 is a vertical section, taken through the venturi, showing how the hot steam and milk are brought together and mixed.

FIG. 7 is a an exploded perspective view of a modification of our invention in which the venturi frothing unit, together with the milk container, are detachable from the cappucino maker.

### DETAILED DESCRIPTION OF THE INVENTION

Our cappucino maker 1 has the usual housing 2 and dispensing area 3. The dispensing area, however, includes

**2**

two proximate dispensing spouts, a coffee (espresso) spout 5 and a steamed milk spout 7. The two spouts are close enough together so that both can be directed to a cappucino cup at the same time. The unit also includes a coffee basket 11 with handle 13, an on-off switch 15 with indicator light 17, a steam adjustment knob 19 and a water inlet 21. These work in the customary way.

Our cappucino maker includes the usual elements found in such a unit: a water supply coupled with heating means to produce steam; means to run the steam through ground coffee to produce espresso coffee; an outlet for the coffee; and means to run steam through milk to froth it. It differs, however, in that, inter alia, the milk supply can be removed from the unit when desired to store the milk. Also, in our modification, the steam line to the milk includes a make and break connection, with self-closing valves, so that the milk frothing unit can also be removed from the cappucino maker.

Cappucino maker 1 includes a milk container 25 carrying milk 27. Container 25 is secured to housing 2 by latch 23 and the latch-receiving slot 35 on container top 29. A milk delivery tube 31 is carried by top 29 and extends down into container 25. It carries a seal 33 at its upper end. The tube 31 is to deliver milk to a venturi frothing unit.

A venturi 41 is carried by the housing 2 and mounted just above milk container 25. It acts as a milk frothing unit and has a steam inlet 43, to receive hot steam from the housing. The steam enters one end of the venturi 41, passes through a narrow aspirating portion 47, and leaves past a conical spring 53 (to assist in frothing the milk) to frothed milk outlet 55. Milk delivery tube 31 passes through spring-loaded seal 33 to its connection with milk inlet 45 on venturi 41. This leads milk to the narrow portion 47 of the venturi, the narrow portion acting as an aspirator as is customary with venturis. The milk mixes with steam in the narrow portion, frothing it, and the milk and steam pass towards frothed milk outlet 55. Conical spring 53 is encountered during that passage, which serves to further froth the milk. If desired, a froth control, such as a needle valve, can be positioned in the narrow portion 47 of venturi 41, to control the rate of flow of steam through the venturi.

The frothed milk goes from outlet 55 to and through tube 57, which leads to milk spout 7. This milk spout is positioned proximate to coffee spout 5, thus providing convenience in serving the cappucino. Preferably spouts 5 and 7 are close enough together so that both coffee and steamed milk can be delivered to a cup without moving the cup.

When one is finished using the cappucino maker, the milk container 25 can be removed from the unit by releasing latch 23. The container can them be placed in a refrigerator to preserve the milk. At the next time of use, the container can again be attached to the unit, with milk take up tube 31 connecting to the venturi milk inlet through seal 33. In the interim, the milk has been preserved from spoiling.

In a modification of our invention seen in FIG. 7, the milk container 25 and the venturi unit are detachable as a unit. In this instance, steam line 61 in the housing is connected to steam connection 62 on the venturi system; and frothed milk connector 63 in the housing is connected to milk connection 65 on the venturi system. These connections are preferably of the quick-acting and self-closing type.

It will be appreciated that our invention, particularly as shown in FIG. 7, can be used to modify existing espresso makers so that they can make cappucino. This would be accomplished by providing means for the espresso maker steam line to also be used to steam and froth milk, and by providing means by which this steam can be interconnected

5,473,972

**3**

to a venturi frothing unit.

We claim:

1. In a cappucino maker having a housing, a steam source, means for steaming coffee using steam from said steam source, a coffee dispensing spout for dispensing said steamed coffee, and a frothed milk dispensing spout, that improvement including

a milk frothing unit, said milk frothing unit including a venturi having a steam connection for receiving steam from said steam source, a narrow aspirating portion, and a frothed milk delivery portion, a milk container, latch means detachably securing said milk container to said housing, a milk delivery tube attached to said milk container and positioned to receive milk from said milk container and to deliver it to said narrow aspirating portion, and means interconnecting said frothed milk delivery portion and said frothed milk dispensing spout,

whereby milk can be kept in a milk container which can be separated from said housing so that the milk can be stored under refrigeration.

2. In a cappucino maker as set forth in claim **1**, that improvement in which said latch means connects with said narrow aspirating portion.

**4**

3. In a cappucino maker as set forth in claim **2**, that improvement including sealing means for detachably interconnecting said milk delivery tube and said narrow aspirating portion.

4. In a cappucino maker as set forth in claim **1**, that improvement including securing means securing said milk frothing unit to said milk container whereby said milk frothing unit is detached from said housing when said milk container is detached from said housing.

5. A detachable milk unit for use in a cappucino maker, said cappucino maker having a housing and a milk frothing device in said housing, said unit including

a milk container, latch means for detachably securing said milk container to said housing, a milk delivery tube in said milk container, said milk delivery tube being positioned to carry milk from said milk container, and sealing means for detachably securing said milk delivery tube to said milk frothing section,

whereby milk can be kept in a milk container which can be separated from said housing so that the milk can be stored under refrigeration.

\* \* \* \* \*